# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| AMIE REYNOLDS | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| | § | Jury Demanded |
| SHADY BROOK ANIMAL | § | |
| HOSPITAL, INC. | § | |
|     Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

**NOW COMES** Plaintiff, Amie Reynolds, complaining of and about Defendant, Shady Brook Animal Hospital, Inc., and for cause of action shows unto the Court the following:

## PARTIES AND SERVICE

1. Plaintiff, Amie Reynolds, is a citizen of the United States and the State of Texas and resides in Montgomery County, Texas.

2. Defendant, Shady Brook Animal Hospital, Inc., is a Texas corporation having its principal place of business at 29607 Nichols Sawmill Road, Magnolia, Texas, 77355. Shady Brook may be served with summons by serving its registered agent, Jessica S. Quillivan, DVM, at 29007 Forest Hill Drive, Magnolia, Texas 77355, or at her

place of business, 29607 Nichols Sawmill Road, Magnolia, Texas, 77355, or where ever she may be found in the State of Texas.

## JURISDICTION AND VENUE

3. The court has jurisdiction over the lawsuit under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e *et. seq*, as amended by the PREGNANCY DISCRIMINATION ACT OF 1978 (PDA) 42 U.S.C. §2000e *(k)*, and supplemental jurisdiction under 28 U.S.C.§1367 over related state law claims alleging violations of the TEXAS LABOR CODE Chapter 21, to correct illegal employment discrimination because of Reynolds' sex and because of her pregnancy, childbirth, or related medical conditions.

4. Venue is proper in this district under 28 U.S.C. §1391(b)(2) and 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practices were committed in Magnolia, Texas which is in this District.

## NATURE OF THE ACTION

5. This action arises under TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (TITLE VII),42 U.S.C. §2000e *et. seq*, as amended by the PREGNANCY DISCRIMINATION ACT OF 1978 (PDA) 42 U.S.C. §2000e *(k)* and Chapter 21 of the TEXAS LABOR CODE.

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

6. All conditions precedent to jurisdiction have occurred or been complied with: A charge of discrimination was timely filed with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission – Civil Rights Division, within one hundred and eighty days of the acts complained of herein. A Notice

of Right to Sue was issued by the EEOC on May 11, 2012. Reynolds' Original Complaint is filed within ninety days of Plaintiff's receipt of the EEOC's issuance of the Right to Sue letter which is attached as *Exhibit A*. Notice of Right to Sue from the TWC has been requested.

**FACTS**

7. Amie Reynolds ("Reynolds") began working as a Veterinary Assistant at the Shady Brook Animal Hospital, Inc. ("Shady Brook") about March of 2008.

8. About May 1, 2010, Reynolds received a letter of termination, dated April 9, 2010. Reynolds was pregnant at the time she was terminated by Defendant.

9. At all relevant times, prior to her involuntary termination from employment by Defendant, Mrs. Reynolds was an employee of Shady Brook Animal Hospital, Inc. under the relevant statutes.

10. At all relevant times, Shady Brook was an employer as defined by TITLE VII and the TEXAS LABOR CODE and had at least fifteen (15) employees for purposes of these claims.

12. At the end of September 2010, Reynolds found out she was pregnant. She informed the Owner, Jessica Quillivan, DVM, the Office Manager, Susan Kanouff, and the Lead Veterinary Technician II, of her pregnancy the same days she found out.

13. At the very first visit to her Obstetrician around the end of October, 2010, Reynolds was given two restrictions: (1) not to handle or restrain large dogs/animals; and, (2) not to handle cat litter.

14. Despite these two restrictions imposed by physician's orders, Quillivan informed Reynolds in front of the entire Shady Brook staff, that if she could not handle the animals then she did not have a job.

15. Reynolds tried to explain that it was only large dogs that the doctor's paperwork referenced her being unable to handle, but the distinction didn't appear to matter to Quillivan.

16. In November 2010 Reynolds was placed on a leave of absence, without pay, per Quillivan and Kanouff, and they demanded documentation from Reynolds' obstetrician. They demanded a detailed letter from Reynolds' obstetrician detailing her restrictions and what parts of her job she was and was not able to perform. They also told Reynolds that if her current obstetrician would not write a letter she had to change to an obstetrician that would write a letter documenting the restrictions.

17. Quillivan and Kanouff told Reynolds they could place her on leave and make the demand for documentation under the requirements of the FAMILY AND MEDICAL LEAVE ACT. The company did not employ 50 people and was not subject to the FAMILY AND MEDICAL LEAVE ACT, but Reynolds did not know differently.

18. Reynolds was not permitted to return to work until Quillivan received the documentation from Reynolds' obstetrician.

19. The office of Clayton Young, M.D., Reynolds' obstetrician, did fax a letter from the doctor to Shady Brook, but Kanouff denied receiving the letter and personally called Dr. Young's office to demand that the letter be faxed again.

20. Quillivan, even called Reynolds' obstetrician and stated that she would continue to call every day until she had the letter in her hands. This was also done in front of the entire office staff at Shady Brook.

21. Reynolds was eventually allowed to return to work the second week of December 2010, after she gave them a copy of the letter from her doctor.

22. Toward the middle of December, Reynolds was then told by Quillivan and Kanouff, that they did not have to abide by her doctor's restrictions because if they did it for her then they would have to do it for anyone else who became pregnant..

23. Reynolds was then required to clean all areas of the hospital, including cat litter, clean instruments and restrain large dogs, all in violation of her doctor's restrictions.

24. Quillivan told Reynolds that she must complete those assigned tasks, and she could wear rubber gloves, aprons and goggles. Quillivan went on to inform Reynolds that Shady Brook did not have to abide by the obstetrician's restrictions, that they only had to accommodate Reynolds by providing her with the personal protective wear.

25. On January 3, 2011, Reynolds spoke with Quillivan regarding some minor complications with her pregnancy due to being on her feet so much.

26. Reynolds was then given three options by the office manager: (1) reduce her hours to part time which would cause her to loose her health insurance; (2) because business was slow and they planned on letting an employee go any how, Reynolds could

be fired....after all she was the "best candidate for firing" per the Kanouff; or, (3) be placed on short term disability due to her complications and keep her health insurance.

27. Reynolds opted for option three in order to keep her health insurance and was immediately told to leave the premises and not return to work, even though the disability paper work had not been completed by the doctor.

28. Reynolds later tried to discuss with Quillivan when she would be returning to work and Quillivan replied, "no problem, we'll get you on the schedule."

29. On April 10, 2011, Quillivan and the office staff gave Reynolds a baby shower and no one mentioned anything about her employment ending. In fact, Quillivan was present when several people asked Reynolds when she would be returning to work.

30. Then on May 1, 2011, Reynolds received a letter dated April 9, 2011, stating that she was being terminated for exhausting her FAMILY AND MEDICAL LEAVE ACT time allowance.

31. Reynolds had no idea she was even using FMLA time, as it was never discussed with her at any point in time, except as justification for demanding that she be placed on leave while waiting for verification from her physician.

32. Reynolds was told that she would be placed on COBRA coverage. She did not receive any information for her COBRA coverage but continued to timely pay her medical insurance premium every month directly to Shady Brook in the amount which Kanouff told her to pay.

33. At no time did Reynolds receive anything from the insurance company or Shady Brook regarding COBRA insurance coverage or premiums.

34. Reynolds was terminated because of her gender and specifically because of her pregnancy in violation of TITLE VII OF THE CIVIL RIGHTS ACT of 1964, 42 U.S.C. §2000e *et. seq* as amended by the PREGNANCY DISCRIMINATION ACT of 1978 (PDA), 42 U.S.C. §2000e (k).

## COUNT I-PREGNANCY DISCRIMINATION

35. Plaintiff hereby incorporates paragraphs 1 through 34 by reference.

36. Defendants intentionally discriminated against Plaintiff because of her sex, pregnancy, childbirth, or related medical conditions in violation of TITLE VII OF THE CIVIL RIGHTS ACT OF 1964(TITLE VI), 42 U.S.C. §2000e *et. seq.*, as amended by the PREGNANCY DISCRIMINATION ACT OF 1978 (PDA), 42 U.S.C. §2000e(k).

37. At all relevant times, Reynolds belongs to a protected class in that she was pregnant.

38. Reynolds was qualified for her position at issue.

39. Reynolds was replaced by someone outside the protected class, treated less favorably than other employees who were not pregnant, or otherwise discriminated against because of her pregnancy in violation of TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e *et. seq.*, as amended by the PREGNANCY DISCRIMINATION ACT OF 1978 (PDA), 42 U.S.C. §2000e(k).

## RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

40. Whenever in this complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

41. Defendant is vicariously liable for the conduct of its employees.

## DAMAGES

42. As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages:

   a. Plaintiff was terminated from employment with Defendants. Although Plaintiff has diligently sought other employment, he has been unable to find and maintain a job at comparable pay. In addition, Plaintiff has incurred expenses in seeking other employment;

   b. Plaintiff seeks compensation for all past and future lost wages and benefits, plus prejudgment and postjudgment interest at the prevailing rate;

   c. Plaintiff is entitled to postjudgment interest on all sums, including attorney fees and costs awarded in this action;

   d. Plaintiff suffered physical pain, mental anguish and emotional distress in the past and future;

e.  Any and all other damages to which Reynolds may be rightfully entitled.

### PUNITIVE DAMAGES UNDER TITLE VII and TEXAS LABOR CODE

42. Plaintiff would further show that the acts and omissions of Defendant complained of herein were committed intentionally with malice or reckless indifference to the federally and state protected rights of Reynolds. In order to punish said Defendant for engaging in unlawful business practices and to deter such actions and/or omissions in the future, Plaintiff also seeks recovery from Defendant for punitive damages.

### ATTORNEY FEES AND COSTS

43. Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k) and the Texas Labor Code .

### PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, AMIE REYNOLDS, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; attorneys fees and costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By:/s/ *Jo Miller*

JO MILLER
LAW OFFICE OF JO MILLER, PLLC
Texas Bar No. 00791268
Southern District Bar No: 20385
505 North Main
The Parsonage
Conroe, Texas 77301
Tel. (936) 539-4400
Fax: (936) 539-4409
jmiller@jomillerlaw.com
Attorney-in-Charge for Plaintiff,
Amie Reynolds

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**