UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMIE REYNOLDS, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:12-CV-2258 |
| SHADY BROOK ANIMAL HOSPITAL, INC., | § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Shady Brook Animal Hospital, Inc.'s Motion for Summary Judgment, or Alternatively Partial Summary Judgment. (Doc. No. 18.) After considering the Defendant's Motion, the responses thereto, and all applicable law, the Court determines that the Motion for Summary Judgment must be **GRANTED**.

### I.   BACKGROUND

Plaintiff Amie Reynolds began working as a Veterinarian Assistant at Shady Brook Animal Hospital, Inc. ("Shady Brook") on March 10, 2008. (Doc. No. 19, Ex. 2 ¶ 2.) Shady Brook is a veterinary clinic that caters primarily to the care of dogs and cats. (Doc. No. 18 at 2.) As a Veterinarian Assistant, Reynolds' responsibilities included taking the animals into exam rooms, preparing and monitoring the animals before and after surgery, treating the animals as directed, cleaning the hospital, and maintaining instruments and equipment. (Doc. No. 19, Ex. 13.)

Toward the end of September, Reynolds found out that she was pregnant. (Doc. No. 19, Ex. 2 ¶ 4.) The Shady Brook Employee Handbook has the following rules for pregnant women:

**Reporting the pregnancy:** Notify your employer as soon as you

> think you may be pregnant. Many aspects of a veterinary hospital are dangerous to a pregnancy. Please notify your employer immediately if you are pregnant or become pregnant so that we can ensure the safety of your new baby. Your physician should approve of your continuing employment and fully explain any work restrictions. Your physician also should provide a reasonable estimate of the latest date you will be allowed to work. You may continue working so long as your physician deems that doing so would not endanger your health.

(Doc. No. 20, Ex. 31 at 7.) Pursuant to the Employee Handbook, Reynolds immediately informed the Owner, Jessica Quillivan, DVM, and the Office Manager, Susan Kanouff, of her pregnancy. (Doc. No. 19, Ex. 2 ¶ 4.)

Reynolds' OB-GYN, Clayton Young, MD, recommended three work restrictions: (1) Reynolds should not restrain large dogs, (2) Reynolds should be careful handling cats, because of cat scratch fever, and (3) Reynolds should not handle cat litter. (Doc. No. 19, Ex. 2 ¶ 8.) Reynolds conveyed these oral recommendations to Kanouff on October 21, 2010. (*Id.* at ¶ 7.) At a team meeting the next day, Kanouff announced that Reynolds "was not allowed to handle any of the animals." (*Id.* at ¶ 10.) Quillivan allegedly stated that "if an employee could not handle the animals, they did not have a job." (*Id.* at ¶ 11.)

Before the end of October, Reynolds received two written disciplinary reports. The first write-up was for "neglecting patient care," for which Kanouff placed Reynolds on three months of probation. (Doc. No. 19, Ex. 2 ¶ 14-15.) The second was for filling a prescription incorrectly. (*Id.* at ¶ 17.) Reynolds alleges that other employees made the same mistakes without repercussions. (*Id.* at ¶ 16 and 19.)

Kanouff insisted that Reynolds provide a written doctor's note explaining her work restrictions. (Doc. No. 19, Ex. 2 ¶ 22.) On November 19, 2010, Kanouff placed Reynolds on unpaid leave "since they did not have a note in writing from Dr. Young." (*Id.* at ¶ 28; Doc. No.

20, Ex. 33 at 4.) On December 2, 2010, Reynolds returned to work with the list of job duties marked and signed by her doctor. (Doc. No. 19 at 7; Doc. No. 19, Ex. 2 ¶ 48; Doc. No. 20, Ex. 33 at 5.) After her return, Reynolds alleges that she was restricted far beyond what her doctor recommended. (*Compare* Doc. No. 19, Ex. 2 ¶ 34 *with* Doc. No. 19, Ex. 10.)

On January 3, 2011, after experiencing minor complications with her pregnancy, Reynolds informed Quillivan that she "planned to use a pregnancy belt for support and it would help to be on [her] feet less." (Doc. No. 19, Ex. 2 ¶ 37.) According to Reynolds, Kanouff subsequently gave her three options – she could work part-time and lose her health insurance, she could take a pay cut and go on short-term disability, or she could accept termination "because things were slow and they were going to fire an employee anyway and [she] would be the best candidate for termination." (*Id.* at ¶¶ 38-41.) Reynolds claims that she "was required to take short term disability or essentially be fired." (*Id.* at ¶ 47.)

Kanouff agrees that she gave Reynolds the options of part-time work or short-term disability. (Doc. No. 20, Ex. 33 at 5-6.) In her notes, Kanouff wrote that they did not have a sitting position to accommodate Reynolds. (*Id.* at 5.) Reynolds allegedly told Kanouff that part-time work was not an option as she could "only be up for a couple of hours at a time." (*Id.* at 6.) Instead, Reynolds "decided that she would go on her 12 weeks FMLA and at the end of that 12 weeks she would no longer be an employee." (*Id.* at 1-2.)[1]

According to Shady Brook, Reynolds' 12 weeks of leave expired on April 9, 2011. (Doc. No. 19, Ex. 7.) In a letter dated April 29, 2011, Shady Brook informed Reynolds of her termination, and her eligibility for rehire once her physician released her from disability. (*Id.*) Reynolds gave birth to a baby boy on May 24, 2011, and has not sought re-employment at Shady

---

[1] At the time of these relevant decisions, Shady Grove mistakenly believed that it was covered by the Family Medical Leave Act (FMLA). (Doc. No. 19 at 7; *see also* Doc. No. 20, Ex. 33 at 3-4.) According to FMLA, an eligible employee is entitled to twelve weeks of leave for "the birth of a son or daughter." 29 U.S.C. § 2612(1)(a).

3

Brook. (Doc. No. 19 at 3 and 11.)

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### B. Employment Discrimination Framework

Reynolds alleges pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, and Chapter 21 of the Texas Labor Code. Title VII of the Civil Rights Act of 1964 prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  Likewise, Chapter 21 of the Texas Labor Code prohibits employers from discriminating on the basis of an employee's sex.  Tex. Lab. Code § 21.051.  Discrimination on the basis of sex, according to both statutes, includes discrimination on the basis of "pregnancy, childbirth, or related medical conditions . . ." 42 U.S.C. § 2000e(k); Tex. Lab. Code § 21.106.  For the most part, the analysis for Chapter 21 of the Texas Labor Code follows the analysis for Title VII of the Civil Rights Act.  *See Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606-07 (5th Cir. 2007).

Discrimination claims that rely on indirect or circumstantial evidence are governed by the *McDonnell Douglas* framework.  Under this framework, the plaintiff must first establish a *prima facie* case of discrimination:  the plaintiff must show that she (1) is a member of a protected group (pregnant women); (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated, non-pregnant employees, or was replaced by a person who was not a member of her protected group.  *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  If the plaintiff establishes the *prima facie* case, the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for its employment action.  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142-43 (2000); *McCoy*, 492 F.3d at 557.  The plaintiff must respond with evidence that shows the employer's proffered explanation to be mere pretext for discrimination.  *Reeves*, 530 U.S. at 143.

The Court need not conduct the *McDonnell Douglas* analysis if the plaintiff presents direct evidence of pregnancy discrimination.  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  Direct evidence of discrimination "includes any statement or written document showing a discriminatory motive on its face."  *Portis v. First Nat'l Bank of New Albany*, 34 F.3d

325, 329 (5th Cir. 1994). The presence of direct and material evidence of discrimination means that judgment as a matter of law for a defendant is not appropriate. *Vance v. Union Planters Corp.*, 209 F.3d 438, 442 (5th Cir. 2000).

## III. ANALYSIS

### A. Direct Evidence of Discrimination

Reynolds argues that Shady Brook's requirement that pregnant women provide a doctor's note in order to continue working is "an illegal act on its face." (Doc. No. 19 at 3.) Shady Brook's Employee Handbook states that a pregnant employee "may continue working so long as [her] physician deems that doing so would not endanger [her] health." (Doc. No. 20, Ex. 31 at 7.) The Handbook contains no such requirement for employees with other health concerns. The Court is troubled by a policy that singles out pregnant women and predicates their continued employment on a doctor's approval.[2]

Nevertheless, the existence of this policy statement is not direct evidence of discrimination against Reynolds since it is unrelated to the adverse employment actions that she suffered. Reynolds informed Shady Brook of her pregnancy in September and continued to work without providing her physician's approval. (Doc. No. 19, Ex. 2 ¶ 4.) Shady Brook required a physician's note only after Reynolds requested accomodations due to health concerns. (*See id.* ¶ 22.) This is not direct evidence that Shady Grove discriminated against Reynolds because of her pregnancy, as it shows only that Shady Grove required confirmation when confronted with an employee's request for health-related accomodations. (*See* Doc. No. 20, Ex. 33, at 1.) Without direct evidence of discrimination, the Court must undertake an analysis of

---

[2] As in *Carney v. Martin Luther Home, Inc.*, 824 F.2d 643, 649 (8th Cir. 1987), this Court has "no doubt that [Shady Grove] harbors no ill motive against plaintiff or other pregnant women." Yet, "history reveals that women have consistently been denied equal opportunities based on a professed concern for their well-being and/or unfounded notions about their capabilities." *Id.*

6

Reynolds' claims under the burden-shifting framework of *McDonnell Douglas*.

### B. Indirect Evidence of Discrimination

Reynolds' case falters at the first step of the *McDonnell Douglas* framework. To survive summary judgment, "a plaintiff must prove, at least, that there is a genuine dispute of material fact concerning [her] *prima facie* case." *Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006). Reynolds provides clear evidence for the first three requirements of the *prima facie* case, but not the fourth. (*See* Doc. No. 19 at 15-17.) Since there is no evidence that Reynolds was replaced, Reynolds must present evidence to demonstrate a genuine issue of material fact as to whether she was treated less favorably than other similarly situated, non-pregnant employees.

Reynolds summarily states that the fourth element is satisfied if "after discharge, others who were not members of the protected class remained in similar positions." (Doc. No. 19 at 15.) Courts have considered whether similarly situated employees outside of the plaintiff's protected class retained their jobs when the plaintiff was selected for termination. *See Vaughn v. Edel*, 918 F.2d 517, 521-22 (5th Cir. 1990); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966, 968 (5th Cir. 1999); *Vasquez v. El Paso Cnty. Cmty. Coll. Dist.*, 177 Fed. Appx. 422, 424 (5th Cir. 2006). Such evidence would satisfy the fourth requirement of the *prima facie* case since it demonstrates that the plaintiff was treated less favorably than other similarly situated employees outside of the plaintiff's protected class. *See Vasquez*, 177 Fed. Appx. at 424. Reynolds has provided no evidence of such differential treatment.

Reynolds details the ways in which she believes she was treated unfairly. Reynolds alleges that she was given three unenviable choices when she asked to "be on [her] feet less" due to complications with her pregnancy – she could work part-time and lose benefits, take short-term disability and accept a pay cut, or face termination. (Doc. No. 19, Ex. 2 ¶¶ 36-41.) Shady

Brook seems to have withheld a fourth option of moving Reynolds to the open position of Pharmacy Technician, which would have accommodated her physical limitations. (Doc. No. 19, Ex. 6.) Given the options available to her, Reynolds chose to go onto short-term disability for twelve weeks. (Doc. No. 19, Ex. 8 at 3.) After twelve weeks of disability, Shady Brook informed Reynolds of her termination. (Doc. No. 19, Ex. 7.) Reynolds would be eligible for rehire, according to the letter of termination, when her physician released her from disability. (*Id.*)

Reynolds fails to provide, however, any evidence that Shady Grove treats similarly situated, non-pregnant employees any differently. There is no evidence that Shady Grove allows non-pregnant employees to change jobs due to other health concerns, to exceed their agreed-upon leave time, or to return to work without a doctor's note. In fact, as to the last point, the evidence suggests that similarly situated non-pregnant employees are treated identically. The Employee Handbook requires any employee returning from disability leave to provide "a statement from a physician declaring that the employee is ready to resume work." (Doc. No. 20, Ex. 31 at 6.)

The only instance in which Reynolds alludes to any differential treatment is when she received two disciplinary reports. (*See* Doc. No. 19, Ex. 2 ¶¶ 13-19.) As to the first disciplinary report, Reynolds states that two Veterinarians and two Registered Veterinary Technicians had not been disciplined for the same infraction. (*Id.* at ¶ 16.) These individuals are not similarly situated to Reynolds since their employment positions differ from Reynolds' position. *See Aguinaga v. Texas Alcohol and Beverage Comm'n*, 98 Fed. Appx. 328, 331 (5th Cir. 2004). As to the second disciplinary report, Reynolds states that "others had also done the same thing without discipline." (Doc. No. 19, Ex. 2 ¶ 19.) There is no identifying information as to the

anonymous "others" for the Court to determine whether they were similarly situated.

Absent some evidence that Reynolds was treated differently from similarly situated employees outside of her protected class, Reynolds cannot maintain a *prima facie* case for discrimination. *See Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Dogan-Carr v. Saks Fifth Ave. Texas, LP*, 2007 WL 646375 at *26 (S.D. Tex. Feb. 26, 2007). The Pregnancy Discrimination Act does not impose on employers a duty to accommodate pregnant employees, but to treat them "the same for all employment related purposes as other employees with respect to their ability or inability to work." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 861 (5th Cir. 2002) (emphasis removed); *see also Coney v. Dallas Hous. Auth.*, 2003 WL 292167 at *4 (N.D. Tex. Feb. 7, 2003). Although Reynolds may be unhappy with the way that she was treated while pregnant, she has adduced no evidence that she was treated discriminatorily because she was pregnant.

Reynolds' failure to satisfy the fourth prong of the *prima facie* case is fatal both to her Title VII claim and her Chapter 21 claim. Reynolds notes that Shady Grove mistakenly characterizes her claims as arising under Title VII alone (*see* Doc. No. 18 at 1), and argues that her Chapter 21 claim still stands (Doc. No. 19 at 2). The Court finds that Shady Grove moves for summary judgment "defending against *all* claims and actions made by Amie Reynolds." (Doc. No. 18 at 1 (emphasis added).) The Court interprets Shady Grove's subsequent argument as applying to both claims, despite its oversight, since the analysis for the *prima facie* case is identical. The Court finds that there is no genuine dispute of material fact as to the fourth necessary prong of the *prima facie* case, mandating summary judgment for Shady Grove on both claims.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Shady Brook's Motion for Summary Judgment must be **GRANTED**. The case is dismissed with prejudice.

**IT IS SO ORDERED.**

**SIGNED** on this the 7th day of November, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE